**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

MADEL PA

      Plaintiff,

vs.

Deloitte Consulting LLP and Deloitte
Development LLC,

      Defendants.

Court File No.: 24-mc-00050

**MADEL PA'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO
QUASH SUBPOENA**

---

### Introduction

The MADEL PA law firm (the "Madel Firm") respectfully requests that this Court grant its motion to quash the subpoena served on October 4, 2024 because:

(1) the subpoena requests information subject to non-waived attorney-client privilege and work-product protection;

(2) the subpoena seeks information that is duplicative of documents and data already produced in the underlying litigation between Deloitte and the Madel Firm's client, Sagitec, or that is available from a party in the underlying litigation; and

(3) because the subpoena's requests subject the non-party Madel Firm to undue burden and cost with respect to purported ongoing obligations throughout the remainder of the underlying litigation and with respect to a privilege log that would be extensive, costly, and time-intensive given the Madel Firm's role in representing Sagitec.

Any one of these reasons is sufficient to quash the subpoena here.

1

Additionally, the subpoena does not allow for a reasonable time for compliance such that the Madel Firm respectfully requests it be quashed or, alternatively, modified with costs associated with the review, logging, and production of any documents to be paid by Deloitte.

## Relevant Facts

### I.      The underlying litigation

On March 23, 2023, Plaintiffs in the underlying litigation, Deloitte Consulting LLP and Deloitte Development LLC (herein, "Deloitte") sued Defendant Sagitec Solutions LLC ("Sagitec") in the U.S. District Court for the District of Delaware for copyright infringement, trade secret misappropriation, unfair competition, and unjust enrichment arising from Sagitec's hiring of two former Deloitte employees in 2013. (*See generally* Doc.[1] 1 at ¶¶ 61–103.)[2]

In the Underlying Litigation, Deloitte accuses Sagitec of infringing its alleged copyrights and using its alleged trade secrets associated with Deloitte's alleged uFACTS computer program to develop a complete unemployment insurance system comprising software known as Neosurance. (*See, e.g., id.* at ¶¶ 1, 4, 45–49, 55–56, 65.) Specifically, Deloitte's complaint asserts the following counts:

---

[1] Unless otherwise noted, citations to filings are to the docket of the underlying litigation *Deloitte Consulting LLP et al. v. Sagitec Solutions LLC*, 23-cv-325 (D. Del.) (the "Underlying Litigation").

[2] The two former Deloitte employees, David Minkkinen and Sivaraman Sambasivam, were indicted in a pending criminal case in the U.S. District Court for the Southern District of West Virginia. *See United States v. Minkkinen and Sambasivam*, 22-CR-00163 (S.D.W.V.). Sagitec has not been indicted. *See, generally, id.*

- Count 1: copyright infringement under 17 U.S.C. § 101 *et seq.* (*id.* at ¶¶ 61–70);

- Count 2: trade secret misappropriation under New York law (*id.* at ¶¶ 71–81);

- Count 3: trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1839 *et seq.* (*id.* at ¶¶ 82–93);

- Count 4: unfair competition under New York law; (*id.* at ¶¶ 94–98);

- Count 5: unjust enrichment under New York law (*id.* at ¶¶ 99–103).

Sagitec answered the complaint and asserted four declaratory-judgment counterclaims seeking declarations that: the information Deloitte has identified as a trade secret does not satisfy the statutory definition of trade secret (Doc. 59 at Counterclaim Counts 1 & 2 at ¶¶ 26–36); Deloitte does not own the information it claims to be copyrighted (*id.* at Counterclaim Count 3 at ¶¶ 37–41); and Deloitte's claims of trade secret misappropriation and copyright infringement are barred by the statute of limitations (*id.* Counterclaim Count 4 at ¶¶ 42–48).

Notably, not one of Deloitte's counts against Sagitec references or relies on allegations regarding the Madel Firm or its work for Sagitec. (*See generally* Doc. 1 at ¶¶ 61–103.) Nor do Sagitec's affirmative defenses or declaratory-judgment counterclaims reference or rely on allegations regarding the Madel Firm or its work for Sagitec. (*See generally* Doc. 59.)

## II.    Sagitec's cooperation with a federal government investigation and the Madel Firm's internal investigation.

Through documents produced in the Underlying Litigation, Deloitte already knows that the Madel Firm was engaged by Sagitec in July 2019 to represent the

3

company with respect to a grand-jury investigation out of the U.S. Attorney's Office for the Northern District of West Virginia and to conduct an internal investigation as part of Sagitec's cooperation with the government investigation. (Declaration of Jennifer Robbins filed in support of this motion to quash (the "Robbins Decl.") at ¶ 2.) At the time, the government was investigating allegations that former Deloitte employees used alleged Deloitte trade secrets for development of Sagitec's Neosurance software for certain states' unemployment insurance systems. (*Id.*)

As part of the internal investigation, the Madel Firm[3] collected and reviewed documents and conducted interviews. The process that the Madel Firm followed for the investigation, including the information obtained in the investigation, interview statements, and documents reviewed and cited in the Madel Firm's draft report is described in the draft internal investigation report dated October 13, 2020 (the "draft report"). (Robbins Decl. at ¶ 3.)

During this same timeframe, the Madel Firm engaged Computer Forensic Services ("CFS") to assist in analysis of electronic data for purposes of the Madel Firm's provision

---

[3] The Madel Firm represented Sagitec along with West Virginia counsel William J. Ihlenfeld II at Bowles Rice LLP. (Robbins Decl. at n.2.) Ihlenfeld was, at that time, the former U.S. Attorney for the Northern District of West Virginia and is identified in the draft internal investigation report with respect to his participation in the internal investigation. (*Id.*) During the pendency of the investigation, Ihlenfeld was reappointed as U.S. Attorney for the Northern District of West Virginia, a position he continues to hold. (*Id.*) Since Ihlenfeld's reappointment, the Madel Firm has worked with R. Booth Goodwin II of Goodwin & Goodwin as Sagitec's West Viginia counsel in Sagitec's ongoing cooperation with the government and as part of the criminal proceedings against former Sagitec employees addressed below. (*Id.*) Goodwin is the former U.S. Attorney for the *Southern* District of West Virginia. (*Id.*)

of legal advice to Sagitec and to prepare for potential litigation. (Robbins Decl. at ¶ 9.) At times, CFS communicated directly with the government and provided data to the government. (*Id.*)

The Madel Firm understands that, as part of Sagitec's other productions in discovery in the Underlying Litigation, counsel for Sagitec in the Underlying Litigation (the "Robins Kaplan firm" or "Sagitec's civil counsel") produced at least the following information to Deloitte: the draft internal investigation report; all exhibits to the report; all documents cited in the report (totaling approximately 144 documents); and information from each interview and any follow-up interview not only in the report but also in interview statements (each of which is a standalone document providing the date, substance, and participants in each interview and together total approximately 25 interview statements). (Robbins Decl. at ¶ 4.) The draft report alone is over 150 pages in length with over 875 footnotes. (*Id.*)

As Deloitte also knows from the Underlying Litigation, the Madel Firm did not finalize the draft report. (Robbins Decl. at ¶ 3.) After the draft report was provided to the government as part of Sagitec's cooperation with the government's investigation, the government, in sum and substance, took over the investigation and continued in its own investigation using the information from the internal investigation as part of its grand-jury process. (*Id.*) It is the Madel Firm's understanding that all documents provided to the government have been produced in the Underlying Litigation. (Robbins Decl. at ¶ 4.)

The government ultimately charged Minkkinen and Sambasivam in an indictment asserting theft of trade secrets, wire fraud, and felony false statements. (*See* Robbins

5

Decl. at ¶¶ 5–6 (referring to *United States v. Minkkinen et al.*, 22-CR-163 (S.D.W.V.) (the "criminal matter")).) The government later filed a superseding indictment withdrawing the allegations of theft of trade secrets, leaving allegations against Minkkinen and Sambasivam related to alleged trade-secret conspiracy. The district court in the criminal matter dismissed the trade-secret conspiracy count along with several other counts in an order that is currently on appeal in the U.S. Court of Appeals for the Fourth Circuit. (*See* Criminal Docket at Docs. 278, 282.)

For purposes of the Underlying Litigation, it is the Madel Firm's understanding that Sagitec agreed to a limited waiver of attorney-client privilege specific to the internal investigation. (*See* Robbins Decl. at ¶ 11.) Sagitec has not waived any other privileges that Sagitec or its counsel may claim. (*Id.*)

### III. Documents already provided to Sagitec's counsel in the Underlying Litigation.

As indicated above, the Madel Firm provided to Sagitec's civil counsel information and documents related to the internal investigation such as the draft internal investigation report dated October 13, 2020; all exhibits to the report; all documents cited in the report; all interview statements from the interviews the Madel Firm conducted; and all documents provided to the government. It is the Madel Firm's understanding that Sagitec's civil counsel produced this information to Deloitte in the Underlying Litigation. (Robbins Decl. at ¶ 4.) Additionally, the Madel Firm provided Sagitec's civil counsel in the Underlying Litigation with the full electronic database of documents and data

collected from Sagitec, including any unprocessed data collected from Sagitec as part of representation. (*Id.*)

After the Madel Firm transferred all such data to Sagitec's civil counsel in the Underlying Litigation, the Madel Firm deleted its own copy of the e-discovery database to avoid requiring Sagitec to pay for the hosting and other database-related costs associated with the database at two separate firms. (Robbins Decl. at ¶ 4.) This duplicative hosting, and associated cost, was particularly unnecessary given that the Madel Firm did not need the data to continue its representation of Sagitec with respect to the criminal proceeding and negotiations with the government. (*Id.*)

**IV.    The subpoena to the Madel Firm and counsel's meet and confer**

On October 4, 2024, the Madel Firm received an email from Deloitte's counsel with the subpoena included as Exhibit 1 to the Robbins Declaration. (Robbins Decl. at ¶ 1.) The document requests in the subpoena require production of the following documents, as well as a privilege log for any documents withheld, and purports to impose a "continuing" obligation to "requir[ing] further and supplemental production" through the "final judgment" in the underlying litigation (*see* Robbins Decl. Ex. 1).

**Request 1**: All agreements between You and Sagitec.

**Request 2**: All engagement and/or retainer letters by which You engaged Sagitec.

**Request 3**: Documents sufficient to demonstrate the date or dates on which You were retained by Sagitec.

**Request 4**: Documents sufficient to show the scope of Your representation of Sagitec.

7

**Request 5**: All Documents and Communications relating to the Criminal Proceeding, including any prior or subsequent criminal investigation by state or federal agencies. Your response should include any Communications with Tim Keller, William Ihlenfeld, Amanda Jeffers, or representatives of the Bowles Rice LLP or T Keller PLLC law firms.

**Request 6**: All Documents and Communications relating to Sagitec's Internal Investigation. Your response should include any Communications with Tim Keller, William Ihlenfeld, Amanda Jeffers, or representatives of the Bowles Rice LLP or T Keller PLLC law firms.

**Request 7**: All Documents and Communications exchanged with Computer Forensic Services concerning Sagitec, Deloitte, Criminal Proceeding, Sagitec's Internal Investigation, or This Litigation.

**Request 8**: All copies, versions, and drafts of Sagitec's Internal Investigation report.

**Request 9**: All Documents which any Employee of Madel PA, Bowles Rice LLP, or T Keller PLLC law firms reviewed or considered in connection with Sagitec's Internal Investigation.

**Request 10**: All notes taken in connection with Sagitec's Internal Investigation, including but not limited to notes taken in connection with interviews or inquiries of Sagitec Employees.

**Request 11**: All Documents and Communications shared by, among, or between Madel PA, Bowles Rice LLP, or T Keller PLLC law firms on the one hand, and Sagitec on the other hand, related to Sagitec's Internal Investigation.

**Request 12**: Documents sufficient to show the process by which Madel PA, Bowles Rice LLP, and/or T Keller PLLC searched for, collected, reviewed, and identified Documents responsive to this Subpoena.

The subpoena initially had a deadline of October 15, 2024 (11 days after the Madel Firm accepted service of the subpoena via email). (*Id.*; *see also id.* at ¶ 12.) Counsel for Deloitte agreed to extend the deadline to October 17, 2024 to allow for a telephonic meet and confer. (Robbins Decl. at ¶ 12.)

During the meet and confer, which took place on October 15, the Madel Firm inquired as to whether there were specific documents that Deloitte needed in the Underlying Litigation that the Madel Firm could look for and determine on a smaller scale whether the Madel Firm had objections to production. (Robbins Decl. at ¶ 13.) Counsel for Deloitte stated that he was unable to identify specific documents that Deloitte needed in the Underlying Litigation that would allow for such a review by the Madel Firm. (*Id.*) Counsel for Deloitte then inquired as to the documents related to the Madel Firm's retention and the draft report (*see* Requests 1–4, 8) and counsel for the Madel Firm explained that the engagement agreement was an exhibit to the draft report and that, like the draft report, was, therefore, among the documents that had already been produced by Sagitec in the Underlying Litigation. (*Id.*) Counsel for Deloitte did not propose a

9

narrowed scope for document requests in the subpoena. (*Id*.) The Madel Firm noted its intention to bring the instant motion to quash. (*Id*.)

## Argument

Where, as here, a subpoena that "requires disclosure of privileged or other protected matter" without exception or waiver, "subjects a person to undue burden," and "fails to allow a reasonable time to comply" Federal Rule of Civil Procedure 45 requires the Court to either quash or modify the subpoena. Fed. R. Civ. P. 45(d)(3)(A). For the reasons below, modification of the subpoena will not cure the subpoena's defects, and the Madel Firm respectfully requests that it be quashed in its entirety.

**I.** **The subpoena to the Madel Firm should be quashed because it requires disclosure of privileged or other protected matter that is not subject to an exception or waiver and that is either duplicative or for which Deloitte has not established substantial need or undue hardship.**

**A. Deloitte seeks information that is protected and for which there is no exception or waiver.**

As explained above and in the Robbins Declaration, Deloitte's subpoena seeks documents that are subject to attorney-client privilege and protection under the work-product doctrine. Deloitte has not, and cannot, establish an exception or waiver of the protections and privilege asserted.

**1. Deloitte's subpoena seeks documents and information for which attorney-client privilege has not been waived.**

While Sagitec waived attorney-client privilege with respect to the internal investigation, that subject-matter waiver was narrow and clearly identified by Sagitec in the Underlying Litigation. (Robbins Decl. at ¶ 11.) It did not include waiver of any other

10

attorney-client privilege, nor did it waive work-product protection that the Madel Firm (or the other firms mentioned in the subpoena such as Bowles Rice or T Keller PLLC) hold, as addressed further below. (*Id.*)

For example, to the extent the subpoena seeks information beyond the scope of the internal investigation, the attorney-client privilege has not been waived. (*See, e.g.,* Requests 1, 2, 3, 4 (requesting all documents and communications related to all agreements between Sagitec and the Madel Firm, or retention of the Madel Firm by Sagitec, not limited to the internal investigation); Request 5 (requesting all documents and communications related to the criminal proceeding, not related to, or limited to the internal investigation); Request 7 (requesting all documents and communications with CFS related to not only the internal investigation, but also anything "concerning" Sagitec, Deloitte, the criminal proceeding, or the Underlying Litigation).)

To the extent Deloitte seeks such privileged information that is unrelated to the internal investigation, Deloitte should seek it *from Sagitec*—the party in the matter—so that Sagitec may assert its privilege, and Deloitte may avoid imposing undue burden on a non-party to the Underlying Litigation.

**2. Deloitte seeks information that is protected by the work-product doctrine.**

As this Court is well aware, the work-product doctrine was designed to prevent "unwarranted inquiries into the files and mental impressions of an attorney," and recognizes that it is "essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*,

11

329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney").

The Eighth Circuit has explained that work product may be either ordinary, which includes "raw factual information," or opinion, which "includes counsel's mental impressions, conclusions, opinions or legal theories." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) (citations omitted). "Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means." *Id.* (citing Fed. R. Civ. P. 26(b)(3)). Opinion work product, on the other hand, "enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." *Baker*, 209 F.3d at 1054 (citing *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977)); *see also Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir. 1994) ("This court has accorded an attorney's work product almost absolute protection from discovery") (quotation marks omitted) (quoting *Haines v. Liggett Group Inc.*, 975 F.2d 81, 94 (3d Cir. 1992)); *see also id.* ("the protection stemming from the work product doctrine belongs to the professional, rather than the client").

Additionally, to the extent Deloitte seeks documents protected by the work-product doctrine based on Sagitec's narrow attorney-client privilege waiver, that argument should be rejected. The subject-matter waiver of attorney-client privileged documents specific to the internal investigation does not waive work-production claims

12

or protection for Sagitec's counsel such as the Madel Firm. *See, e.g., Minn. Specialty Crops v. Minn. Wild Hockey Club, L.P.*, 210 F.R.D. 673, 676 (D. Minn. 2002) ("Since the work product doctrine is based, however, on different considerations than is the attorney-client privilege, the waiver of its protections may be more limited in scope.") (citations omitted); *see also id.* at 679 (in Lanham Act matter involving advice-of-counsel defense, the court analyzed attorney-client privilege claims separate from work-product claims and noted that documents protected by work product need not be produced where they "plainly address litigation, settlement, or administrative strategies and, thus, are not discoverable"); *Leblanc v. Wilkie*, No. 19-cv-2401-SRN-KMM, 2020 WL 12990219, 2020 U.S. Dist. LEXIS 262027 at *10 (D. Minn. Oct. 23, 2020) (denying motion to compel document protected under work-product claim notwithstanding narrow waiver of attorney-client privilege) (citing Fed. R. Civ. P. 26(b)(3) & *Upjohn Co. v. United States*, 449 U.S. 383, 400–01 (holding if work-product materials were not protected "[a]n attorney's thoughts . . . would not be his own. Inefficient, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing" (quotation omitted) (alteration original to *Leblanc*); *see also Chimie v. PPG Indus.*, 218 F.R.D. 416, 421 (D. Del. 2003) (holding the waiver of the attorney-client privilege does not mean waiver of the work-product doctrine and even though a party "received the attorney-client communications" in discovery, they were not entitled to work product from opposing counsel); *Kickflip, Inc. v. Facebook, Inc.,* No. 12-1369-LPS, 2016 WL 5929003, 2016 U.S. Dist. LEXIS 183588, at *12–13 (D. Del. Sep. 14, 2016) (acknowledging that the

13

Third Circuit has "left open the possibility" that there may be circumstances where an attorney, without knowledge of his client's illegal activity, may properly claim and prevail in asserting a work product privilege even when his client cannot) (citing *Hickman*, 329 U.S. at 510–11 (recognizing that it is "essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.")).

While the Madel Firm bears the initial burden of establishing a factual basis for our work-product claims (which the Madel Firm here, *see, e.g.,* Robbins Decl. at ¶¶ 2, 3, 7–11, 14), Deloitte must then establish "substantial need" and "undue hardship" to obtain documents subject to even just ordinary work-product protection—which Deloitte cannot do in this matter. *See Baker*, 209 F.3d at 1054. Notably, Deloitte's subpoena goes further than just requesting ordinary work product by requesting what is, on its face, opinion work product without any demonstration—let alone even an allegation—of an attorney engaged in illegal conduct or fraud.

> **a.   The documents requested by the subpoena include work-product information prepared in anticipation of litigation.**

There can be no credible dispute that the documents sought by the subpoena include documents prepared in anticipation of litigation. Importantly, the internal investigation was just one part of the Madel Firm's representation of Sagitec with other aspects of representation including preparation for potential litigation (either civil or criminal) brought either by the federal government or the state of West Virginia, or indeed by Deloitte. For example, Sagitec received a target letter from the government on

14

December 3, 2019, after which the Madel Firm and other Sagitec counsel (i.e., Keller and Ihlenfeld) met with the government in early 2020, and undertook the internal investigation. (Robbins Decl. at ¶ 2.) As explained in the draft report, a litigation hold/document preservation notice was issued to certain Sagitec employees by Sagitec's outside counsel, Tim Keller, with a cc to the Madel Firm. (Robbins Decl. at ¶ 2, n.1.) That litigation hold memorandum was attached to the report as Exhibit F and produced in the Underlying Litigation. Among other things, the litigation hold memorandum refers to "an intellectual property dispute that relates to the Neosurance business." (Robbins Decl. at ¶ 2.)

Although the government ultimately indicted Minkkinen and Sambasivam, but not Sagitec, it was not always clear who would be indicted, if anyone, and what role Sagitec would potentially play in any federal or state litigation. (Robbins Decl. at ¶ 14.) Therefore, from the first instance of the government's contact with Sagitec, Sagitec had to prepare to litigate issues related to its Neosurance system and the Madel Firm created documents, and selected or compiled documents as part of that preparation, in addition to taking its own notes that directly convey mental impressions concerning potential litigation. (*Id.*)

Furthermore, the internal investigation itself was done in preparation for litigation. Sagitec conducted the internal investigation specifically because the government was conducting a grand-jury investigation and Sagitec's obvious goal was to cooperate to avoid being charged as part of any criminal proceeding, as well as to avoid potential civil litigation related to either the state or federal government of West Virginia. (*Id.*)

With respect to potential litigation involving Deloitte, it is clear the Madel Firm's work involves a raft of attorney work product. Indeed, in addition to the "intellectual property dispute" referenced in the litigation hold (*supra*), the Madel Firm's involvement in work in anticipation of litigation is further evidenced by a tolling agreement between Deloitte Consulting LLP and Sagitec dated March 28, 2022, which the Madel Firm signed on behalf of Sagitec.

### b. The Madel Firm does not seek to protect Sagitec's business records or raw factual information.

For purposes of clarity and as made clear below, the Madel Firm does not seek to protect Sagitec's business records. *See, e.g., Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1328 (8th Cir. 1986) (noting that documents are not protected under the work-product doctrine merely because they were transferred to an attorney, litigation department, or insurer); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987) (holding the work-product doctrine does not protect documents assembled in the ordinary course of business or for other nonlitigation purposes). It is the Madel Firm's understanding that such underlying or "raw" factual information has already been produced by Sagitec in the Underlying Litigation. (*See, e.g.,* Robbins Decl. at ¶ 4.) There is no need for Deloitte to obtain Sagitec's business records from the Madel Firm. Moreover, any arguable "factual" information specific to the internal investigation has been produced to Deloitte with the draft internal investigation report which the Madel Firm provided to the government, along with the exhibits and cited documents and interview statements. (*Id.*) Yet Deloitte improperly seeks more from non-party counsel to Sagitec.

### c. The subpoena's requests would require production of attorney mental impressions and opinion.

It is clear from the text of the document requests that the subpoena seeks attorney work product, not Sagitec's business records or bare factual information. For example, the following requests each seek attorney work product: Request 5 (documents and communications related to the criminal proceeding); Request 7 (documents and communications with CFS concerning Sagitec, Deloitte, the criminal proceeding, internal investigation, or the Underlying Litigation); Request 8 (all copies, versions, and drafts of Sagitec's internal investigation report); Request 9 (documents reviewed or considered by Sagitec's counsel); Request 10 (all notes taken as part of the investigation).

Requests 5 and 7 seek information that is beyond the subject matter implicated by Sagitec's limited attorney-client privileged waiver, and beyond the internal investigation. In addition, Requests 5, 6, and 7 request work product related to the internal investigation such as the Madel Firm's internal communications, notes, facts, legal theories and strategies, or the Madel Firm's communications with CFS or other counsel for Sagitec, all of which are attorney work product. *See, e.g., Shelton*, 805 F.2d at 1328 ("a lawyer preparing the client's case, assembles information, sifts through what the lawyer considers to be relevant facts, prepares 'legal theories and plan[s] strategy, without undue and needless interference.' This work, which has become known as counsel's 'work product,' is reflected 'in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and [in] countless other tangible and intangible ways.'") (quoting *Hickman*, 329 U.S. at 511) (alterations original to *Shelton*). Sagitec

17

maintains a privilege objection to such documents as well as potentially other objections, and the Madel Firm maintains its own work-product objection, as well. (*See* Robbins Decl. at ¶ 11.) *See, e.g., Minn. Specialty Crops*, 210 F.R.D. at 676 ("Since the work product doctrine is based, however, on different considerations than is the attorney-client privilege, the waiver of its protections may be more limited in scope.").

Similarly, Request 8 seeks all drafts, copies, and versions of the internal investigation report. *First*, to the extent such documents exist and were provided to Sagitec, Sagitec would have produced them in the Underlying Litigation as part of the attorney-client-privilege waiver specific to the internal investigation. Thus, if they exist, Deloitte is already in possession of them, or could direct the request to Sagitec as opposed to a non-party. *Second*, to the extent any other drafts or versions of the internal investigation report exist which were not provided to Sagitec, they are subject to the same work-product analysis. Indeed, if an early version of the draft report were to reflect something different from the October 2020 version produced in the Underlying Litigation and provided to the government, that would be a classic example of attorney mental impressions or notes because it would represent the Madel Firm's attempts to assemble and sift through information considered to be relevant and later determined not to be relevant, or vice versa. There is no basis to invade this work-product protection and Deloitte cannot provide one.

Perhaps the easiest application of the work-product doctrine may be to Requests 9, 10, and 12 (documents reviewed or considered by Sagitec's counsel, all notes taken as part of the investigation, or documents showing the process by which Sagitec's counsel

responded to the subpoena), which are almost verbatim recitations of the definition of work product. *See Shelton*, 805 F.2d at 1328. Again, Deloitte cannot meet its high burden of invading such work product.

Put simply, the 25 interview statements already produced in the Underlying Litigation provide the factual information obtained in any interviews. The factual information obtained as part of the internal investigation is also described in detail over the 152-page draft report and 150+ cited documents and exhibits to the draft report. Other factual information related to the investigation may be sought from Sagitec without invading the Madel Firm's work product. Internal documents and communications among members of the Madel Firm, with CFS, or between the Madel Firm and other counsel involved in the investigation would reveal attorney mental impressions—*not* raw factual information.

### B. Deloitte seeks information that is duplicative of documents and information already produced in the Underlying Litigation or for which Deloitte cannot establish substantial need for, or undue hardship without.

As the Madel Firm explained during the meet and confer with counsel for Deloitte—and as Deloitte knows from the documents produced in the Underlying Litigation—documents related to the internal investigation that are not privileged or protected have already been produced. For example, the engagement agreement with Sagitec has already been produced in the Underlying Litigation as Exhibit A to the draft internal investigation report. (*See* Robbins Decl. Ex. 1 at Requests 1, 2, 3, and 4 (requesting all agreements between the Madel Firm and Sagitec, engagement and/or

retainer letters, and documents sufficient to demonstrate the date when the Madel Firm was retained by Sagitec, and documents sufficient to show the scope of representation).) To the extent Exhibit A to the draft report does not include "all agreements" between the Madel Firm and Sagitec—a vague and overbroad request—or there are other documents related to the Madel Firm's retention, those documents are in Sagitec's possession and can be requested from Sagitec directly rather than from a non-party to the Underlying Litigation.

Requests 5, 6, and 7 request additional documents and communications related to the criminal proceeding (Request 5), the internal investigation (Request 6), or communications with CFS related to the criminal proceeding, internal investigation, the Underlying Litigation, or generally "Sagitec" or "Deloitte" (Request 7). (Robbins Decl. Ex. 1 at Requests 5–7.) To the extent these requests seek documents that are not work-product protected or subject to attorney-client privilege (*supra*), the requests seek documents that are in the possession of Sagitec and could be sought directly from Sagitec (such as the documents cited in the report and other documents and communications with Sagitec related to the internal investigation or produced in the criminal proceeding); or are in the possession of CFS and are subject to a subpoena to CFS. (Robbins Decl. at ¶ 9.)

Requests 8, 9, 10, and 11 request documents specific to the internal investigation that, again, are either subject to work product protection, are duplicative of documents that can be or already have been obtained from Sagitec, or for which Deloitte cannot show substantial need or undue hardship without—particularly given the documents that

20

have already been produced related to the investigation. Specifically, the requests seek

the following:

- **Request 8**: All copies, versions, and drafts of Sagitec's Internal Investigation report.

- **Request 9**: All Documents which any Employee of Madel PA, Bowles Rice LLP, or T Keller PLLC law firms reviewed or considered in connection with Sagitec's Internal Investigation.[4]

- **Request 10**: All notes taken in connection with Sagitec's Internal Investigation, including but not limited to notes taken in connection with interviews or inquiries of Sagitec Employees.

- **Request 11**: All Documents and Communications shared by, among, or between Madel PA, Bowles Rice LLP, or T Keller PLLC law firms on the one hand, and Sagitec on the other hand, related to Sagitec's Internal Investigation.

(*See* Robbins Decl. Ex. 1.) The obvious privilege and work-product protections that are

implicated by these requests are addressed above. Additionally, however, it is unclear

what more Deloitte is requesting—let alone what would rise to the level of substantial

need—in the Underlying Litigation that has not already been produced, or that could not

be sought from Sagitec directly. (*See* Robbins Decl. at ¶¶ 13–14 (regarding meet and

confer).) Counsel for Deloitte was unable to provide the specific types of documents

sought or even the basis of relevance for the requests other than the idea that the internal

investigation and criminal matter related to trade secrets and the Underlying Litigation is

a trade-secret case. (*Id.*) That is not a sufficient justification for the requests for work-

---

[4] To the extent requests 9, 11, and 12 seek documents from the Bowles Rice or T Keller PLLC law firms, the Madel Firm also objects on the basis that those documents should be sought from those firms, not the Madel Firm, which is a separate entity that does not represent Bowles Rice or T Keller PLLC.

product information. Neither Deloitte's counts in its complaint, nor the defenses and counterclaims brought by Sagitec in the Underlying Litigation even refer to the internal investigation or the Madel Firm, the absence of which highlights the fact that documents that Deloitte requests are simply not necessary to the Underlying Litigation.

The lengthy draft report and the approximately 175 documents cited in, or included as exhibits to, the report have already been provided. The Madel Firm does not even have access to the database of documents and data to even attempt to provide additional documents beyond what is described or cited in the report or beyond what has already been produced by Sagitec in the Underlying Litigation (and requiring such an undertaking would be unduly burdensome to the Madel Firm, as addressed further below). Thus, the subpoena to the Madel Firm is duplicative of the information already in Deloitte's possession, protected attorney work product, and/or is irrelevant or at least does not meet Deloitte's required showing of substantial need. For these reasons, the Madel Firm respectfully requests that its motion to quash be granted.

## II.     The subpoena should be quashed because it subjects the Madel Firm to undue burden.

The subpoena purports to require that the Madel Firm continue to provide documents responsive to the requests on an ongoing basis. The Madel Firm is not a party to the Underlying Litigation and should not be held to such an ongoing requirement, particularly given the lack of any identifiable relevance of documents moving forward. The internal investigation has concluded such that the Madel Firm's representation of Sagitec does not implicate even the purported basis for the subpoena. Instead, the

22

subpoena can be understood only as an attempt to chill attorney-client communications and the Madel Firm's effective representation of Sagitec, or as an attempt to harass Sagitec and its counsel in the lead up to mediation between the parties to the Underlying Litigation.

Additionally, because of the privilege and work-product issues inherent in each of the subpoena's document requests, it would take the Madel Firm (a non-party) an inordinate amount of time to search for, review, log, and/or produce documents. (Robbins Decl. at ¶ 15.) The logging that the subpoena purports to direct would alone be unduly burdensome. Given the Madel Firm's role in representing Sagitec, such a privilege log would be extensive, time-consuming, and costly, causing the Madel Firm to put aside its work for other clients for what would likely be weeks to simply log documents for which it claims work-product protection, or for which there is attorney-client privilege (i.e., for the vast majority of documents in its custody that have not already been produced in the Underlying Litigation). (*Id.*) Given the extensive discovery in the Underlying Litigation and the information already produced related to the underlying factual information of the internal investigation, such burden—on a non-party—is undue.

To the extent the Court is inclined to require such an expenditure of time and resources, the Madel Firm respectfully requests that Deloitte be required to pay for the time involved in reviewing and logging protected documents.

23

**III.    The subpoena should be quashed because it fails to allow a reasonable time to comply.**

The subpoena initially required compliance within 11 days of the Madel Firm's acceptance of service via email. Even after an extension of time to respond was granted by Deloitte's counsel for purposes of the parties' meet and confer on the instant motion, compliance would still be required within less than two weeks of service. Given the inherent complication of responding to the subpoena, and the extensive privilege log that Deloitte has requested in addition to the production, there simply is not a sufficient, let alone reasonable, time to comply. *See* Fed. R. Civ. P. 45(d)(3)(A).

## Conclusion

Because Deloitte's subpoena to non-party MADEL PA requests documents that are protected by attorney-client privilege and the work-product doctrine, is unduly burdensome, and is unnecessary and duplicative of discovery already obtained or available from Sagitec in the Underlying Litigation, the Madel Firm respectfully requests that the Court grant the instant motion to quash. To the extent the Court is inclined to require production of documents and a privilege log, the Madel Firm respectfully requests that the subpoena be modified to allow a reasonable amount of time for compliance and that Deloitte be required to pay fees and costs associated with the Madel Firm's review, privilege log, and production of documents.

DATED:  October 16, 2024                    Respectfully Submitted,

**MADEL PA**

By */s/ Jennifer M. Robbins*
Christopher W. Madel (#230297)
Jennifer M. Robbins (#387745)
800 Pence Building
800 Hennepin Avenue
Minneapolis, MN  55403
Telephone: 612-605-0630
cmadel@madellaw.com
jrobbins@madellaw.com

*Attorneys for Plaintiff MADEL PA*